24298

In the Matter of Willis R. BROWN, Respondent.

(461 S.E. (2d) 385)

Supreme Court

*Atty Gen. Charles M. Condon* and *Asst. Atty. Gen. James G. Bogle, Jr.*, Columbia, *for complainant.*

*Angela L. Henry*, of *McKay, McKay, Henry & Foster, P.A.* and *John P. Freeman*, Columbia, *for respondent.*

---

Submitted Aug. 2, 1995.

Decided Aug. 17, 1995.

*Per Curiam:*

In this attorney grievance matter, respondent conditionally admits the allegations in the complaint filed against him and consents to disbarment. We accept respondent's admission and disbar him.

### The Janine Long Matter

As part of consent order in a domestic matter, Mr. and Ms. Long agreed to place money for their daughter Janine's college education in one account and agreed that neither party could take or allow anyone else to take any of the funds. Pursuant to the terms of the order, in August 1993 Ms. Long sent respondent approximately $3,500 which he deposited into his trust account. Respondent already held some money and when Ms. Long's money arrived he was to forward the total of approximately $6,000 to Mr. Long.

Janine enrolled in Winthrop University and by letter dated May 18, 1994, respondent advised Ms. Long that he had approximately $6,075 in his trust account designated for Janine's college expenses. On that date, respondent's trust account balance was $46.02. Also in May 1994, respondent advised Mr. Long that he was in need of money and asked to be allowed to borrow against the $6,000 he allegedly held in trust. Mr. Long authorized respondent to borrow against the money.

Ms. Long wrote the Board of Commissioners on Grievance and Discipline on July 12, 1994, expressing concern that the $6,000 was not in respondent's trust account. On that date, respondent's trust account balance was $316.42. On July 26, 1994, respondent borrowed $10,000 from his church in the form of a check drawn on the Calvary AME Church account, and signed by respondent and Lester Dent. The $10,000 was deposited in respondent's trust account and on that same date, respondent sent a check to Winthrop University in the amount of $6,075.25 on Janine's behalf.

### The Ida Portee Matter

Respondent represented the estate of George McQuarters. The two heirs to the estate were Mr. McQuarter's wife, Ida

Portee, and his daughter, Dorothy Nelson, who was appointed personal representative of the estate. Part of the estate consisted of a parcel of real property and, in June 1994, Dorothy purchased Ida Portee's interest in the property for $2,000. Respondent handled the closing. Of the $2,000, respondent was to receive a $666.66 legal fee, Myrtlene Smith was to receive $200, and Ida Portee was to receive the remaining $1,133.34. Respondent did not timely disburse the funds owed Mrs. Portee despite numerous telephone calls and inquiries. By letter dated June 30, 1994, respondent wrote Mrs. Portee and told her he could not find the money but promised to pay the money within ninety days or by September 30, 1994. No disbursement of $1,133.34 was made from respondent's trust account through September 30, 1994, and the balance in the account for the entire month of September was $44.17.

### The Mary L. Heyward Matters

Respondent represented Mary L. Heyward, who was injured in an automobile accident. Ms. Heyward was treated by Dr. Beatrice Gamble. On August 16, 1991, respondent executed a "Doctor Lien" with Dr. Gamble's clinic agreeing to withhold sums owed Dr. Gamble from any settlement, judgment or verdict in the case. The total charges for Ms. Heyward's treatment from July 1, 1991, through August 2, 1991, were $835.

Respondents settled Ms. Heyward's case and executed a settlement statement on September 12, 1991. Although the settlement statement showed disbursement of $835 to Dr. Gamble, Dr. Gamble was not timely paid and in September 1994, she wrote the Board. In his reply to the Board's inquiry regarding the matter, respondent stated he had instructed his paralegal to send Dr. Gamble a check in the amount of $300 and he was "investigating" whether Dr. Gamble was owed any money. On March 30, 1994, a $300 check drawn on respondent's operating account was forwarded to Dr. Gamble and she was paid the remaining balance owed by November 1994.

The settlement statement also showed $100 withheld from the settlement to pay Low Country Billing Services, Inc., for services rendered by Richland County EMS. However, re-

spondent did not pay Low Country Billing Services, Inc. On January 27, 1992, Ms Heyward paid them $20 and the remaining $80 was paid by Medicare.

The settlement statement also showed $300 withheld to pay medical provider Dr. Ronald Johnson. As of March 22, 1995, respondent had not paid Dr. Johnson.

### The Bethel AME Church Matter

Respondent conducted a closing for the sale of property by Bethel AME Church. The closing statement showed $3,177.05 due the Church. On December 23, 1993, the buyer's attorney forwarded a check in that amount to respondent. Respondent did not disburse the funds until February 1994 when he wrote a $3,177.05 check on his trust account payable to Bethel AME Church. The check was returned for non-sufficient funds. Following notification by the bank of the non-sufficient funds, respondent deposited additional monies in his trust account so the check would clear.

### The Almeta Mack Estate Matters

Respondent was the attorney for the Almeta Mack Estate. Doreen Mack was the personal representative of the estate. On March 25, 1994, respondent wrote a $6,000 check payable to himself, drawn on a counter check, in the name of "Estate of Almeta Mack." The designation on the check was "Attorneys Fees—Mack Sons." Respondent signed Doreen Mack's name on the check and negotiated it without authorization or permission from Ms. Mack.

On October 18, 1994, a hearing regarding requests for compensation was held before Richland County Associate Probate Judge Coleman L. Catoe, Jr. Respondent and a paralegal, Neatta P. Zaragoza, were present. Respondent and Ms. Zaragoza presented separate claims for compensation. Ms. Zaragoza's claim was for paralegal fees incurred while working with respondent in the initial administration of the estate. Ms. Zaragoza received $150 weekly from respondent, plus respondent split with her the fees received each week on a 25%/75% basis. Ms. Zaragoza testified that respondent had paid her $250 for the estate work, representing 25% of the $1,000 fee the estate had initially paid him.

### The Mailman Inc. Matter

On June 23, 1994, Book-of-the-Month Club, Inc. issued a check in the amount of $89,006.26, payable to "Mailman Inc.— Postage." Respondent came into possession of the check and deposited it in his trust account on July 27, 1994. Neither Book-of-the-Month Club nor Mailman Inc. were clients of respondent. Because the check was not received by Mailman Inc., Book-of-the-Month Club stopped payment on the check.

On July 26, 1994, respondent wrote two $50,000 checks on his trust account. One of the checks was returned to respondent, the other was negotiated. There were insufficient funds in respondent's account to cover the check and the check was returned to the depositor on July 29, 1994.

On August 2, 1994 respondent wrote checks on his trust account for $25,000, $25,000 and $50,000. All three checks were returned for non-sufficient funds. On August 15, 1994, respondent put stop payments on the checks.

### The Calvary AME Church Matter

Respondent serves as the minister for the Calvary AME Church. Pursuant to the Church's membership in the Co-lumbia District Conference of the AME Church, the Church is required to forward payments to the District twice a year. On April 25, 1992, a $1,280 check drawn on the Church account was issued by the Church, payable to "Columbia District Conference." The check was deposited into respondent's trust account that same day.

### The Bankruptcy Matter

On September 1, 1993, respondent filed a voluntary petition for bankruptcy. Although respondent declared "under penalty" that the information in the petition was true and correct, respondent stated his annual income as minister of Calvary AME Church was $800 when in fact his annual income was $4,800.

### The Bessie T. Wheeler Matter

Respondent represented Bessie T. Wheeler in a foreclosure matter. On April 6, 1994, respondent received $5,000 from Ms. Wheeler, of which $1,000 was for his fee. Respondent placed the remaining $4,000 in his trust account and notified Ms.

Wheeler on April 12, 1994, that he had done so. On April 19, 1994, the $4,000 was transferred to respondent's operating account, leaving a trust account balance of $46.02. On July 13, 1994, respondent borrowed $4,000 from a member of his church and deposited it in his trust account. On July 18, 1994, respondent reimbursed Ms. Wheeler.

### The Notary Public Matters

Respondent is not a notary public. However, on three occasions respondent notarized legal documents for clients.

### The Trust Account Matters

In August 1994, respondent's trust account had a negative balance of $40.83 and on seven occasions in 1994, respondent incurred non-sufficient funds charges on the account. Further, respondent wrote numerous trust account checks for personal expenses.

### Conclusion

By his conduct, respondent has violated the following provisions of the Rules of Professional Conduct, contained in Rule 407, SCACR: Rule 1.3 by failing to act with reasonable diligence and promptness in representing a client; Rule 1.15 by failing to properly safeguard and preserve the identity of the property of his clients; Rule 5.4 by sharing his fees with a non-lawyer; and Rule 8.4 by engaging in conduct involving dishonesty and misrepresentation and that is prejudicial to the administration of justice. Respondent has also violated Rule 413, SCACR, by engaging in conduct which brings the legal profession into disrepute. Respondent has previously been suspended from the practice of law for a period of two years[1] and the present matters warrant his disbarment.

Within fifteen days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Paragraph 30 of Rule 413, SCACR.

Disbarment.

---

[1] *In the matter of Brown,* 286 S.C. 454, 334 S.E. (2d) 281 (1985).